J-S33010-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| DAYVON COX | |
| Appellant | No. 936 WDA 2015 |

Appeal from the PCRA Order December 22, 2014
in the Court of Common Pleas of Beaver County Criminal Division
at No(s): CP-04-CR-0000122-2006

BEFORE: GANTMAN, P.J., OLSON, J., and FITZGERALD,[*] J.

MEMORANDUM BY FITZGERALD, J.:          FILED: July 1, 2016

Appellant, Dayvon Cox, takes this *pro se* appeal from the order denying his timely first Post Conviction Relief Act[1] ("PCRA") petition without a hearing. Appellant intends to challenge the failures of prior counsel for failing to (1) challenge the trial court's decisions not to replace jurors during trial, (2) assert a violation of **Batson v. Kentucky**, 476 U.S. 79 (1986) during jury selection, (3) seek the appointment of a defense expert for the sexually violent predator ("SVP") proceeding, and (4) admit evidence that DNA evidence of a third-party was obtained during sexual assault tests of the rape victim. Additionally, Appellant claims his sentence is illegal under **Alleyne v. United States**, 133 S. Ct. 2151 (2013). For the reasons that

---

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

follow, we remand this matter for a determination of the status of Appellant's privately retained counsel.

This Court previously summarized the facts and procedures underlying Appellant's convictions as follows:

> In the prosecution of this case, the Commonwealth presented testimony from [J.M.], Misty Martin and Brandon Morgan. They testified to a meeting in East Rochester between the three (3) of them and [Appellant] and Brandon Revis. The purpose of this meeting was for Morgan to take [Appellant] and Revis to another individual who could supply them with marijuana. After reaching their destination and not finding the individual, [Appellant] pulled out a gun, struck Morgan in the head with it and forced Morgan back into the vehicle and made him drive. At this point, [Appellant] was in control of the vehicle's passengers. [Appellant] held a gun to [J.M.]'s head before again pointing the gun at Morgan. After forcing Morgan to pull into a parking lot, [Appellant] shot out the driver's window in Morgan's vehicle and asked Morgan if he thought "he was joking around". Next, [Appellant] forced Morgan to drive toward Rochester. Morgan continued driving into Monaca and [Appellant] forced Morgan, at gunpoint, out of the driver's seat and into the back seat. [Appellant] then began driving the vehicle. [Appellant] struck Morgan in the head with his gun once again and demanded any money that Morgan had with him. At this point, [Appellant] forced [J.M.] and Martin to remove their clothing. Next, [Appellant] forced Morgan to withdraw three-hundred dollars ($300.00) at an ATM, while accompanied by Revis, and demanded any jewelry [J.M.] and Martin were wearing. After driving to another parking lot, [Appellant] told the three (3) victims to get out of the vehicle and then forced [J.M.] to return to the vehicle and perform oral sex on him, as well as, vaginal sex. [Appellant] also pointed his gun at Misty Martin and forced her to perform oral sex on Brandon Morgan. After a short

time, [Appellant] left Morgan and Martin and drove [J.M.] to an alleyway where he forced [J.M.] to engage in sexual activity with [four men in addition to Appellant] who had assembled there.

Morgan and Martin were able to stop Aliquippa Police Officer Donald Lane as he was responding to a possible burglary call. They explained what had happened and a police bulletin was issued describing Morgan's vehicle and [J.M.]. At approximately 3:45 a.m., Ambridge Police Officer Michael McQuaide located [J.M.], who was then transported to Aliquippa Hospital where a medical examination was conducted. At the hospital, [J.M.] told the investigating police officers that Appellant forced her to perform oral sex and engage in vaginal intercourse with him and four other men, who were later identified as Brandon Revis, Demarkus Walker, Enrico Jackson and Carlos Hicks. Walker subsequently stated that he and Jackson watched Appellant rape [J.M.]. When Appellant finished with her, all the men took turns raping and sexually assaulting her. When Appellant was arrested, he was found to be in possession of jewelry that belonged to [J.M.].

Appellant was charged with multiple counts of rape, involuntary deviate sexual intercourse (IDSI), sexual assault, kidnapping, unlawful restraint, robbery, terroristic threats, simple assault, aggravated assault, and criminal conspiracy, and one count each of carrying a firearm without a license and robbery of a motor vehicle. On September 26, 2006, a jury convicted Appellant of three counts of kidnapping, four counts of robbery, one count of sexual assault, one count of carrying a firearm without a license, three counts of terroristic threats, one count of simple assault and one count of aggravated assault with a deadly weapon. [18 Pa.C.S. §§ 2901, 3701, 3124.1, 6106, 2706, 2701 and 2702, respectively.] The trial court ordered a pre-sentence investigation and report. The trial court also ordered an investigation to be conducted pursuant to Pennsylvania's version of Megan's Law[, former 42 Pa.C.S. §§ 9791-9799.9].

A Megan's Law hearing was conducted on February 7, 2007, after which the trial court determined that Appellant

- 3 -

is a sexually violent predator. That same day, the trial court sentenced Appellant to serve an aggregate term of twenty-three to fifty-four years of incarceration. Appellant filed a post-sentence motion with several supplements, all of which were denied on July 5, 2007.

*Commonwealth v. Cox*, 1873 WDA 2007 (Pa. Super. Dec. 2, 2008) (unpublished memorandum at 1-4). Appellant was represented at trial by Gerald V. Benyo, Esq.

Although Appellant did not take a timely appeal, the trial court reinstated his direct appeal rights on October 1, 2008. *Id.* at 4. Appellant, represented by Patrick K. Nightingale, Esq., took a direct appeal, and this Court affirmed on December 2, 2008. *Id.* at 35. The Pennsylvania Supreme Court denied allowance of appeal on November 5, 2009. *Commonwealth v. Cox*, 197 WAL 2009 (Pa. Nov. 5. 2009).

Appellant, acting *pro se*, filed a timely PCRA petition, which the PCRA court received on October 27, 2010. The court appointed counsel, Mitchell P. Shahen, Esq., on December 7, 2010. Attorney Shahen filed an amended PCRA petition on April 11, 2012. In his amended petition, Appellant claimed prior counsel failed to challenge (1) the systematic exclusion of blacks from the jury selection process, (2) references to Appellant's codefendant's guilty pleas and codefendant's agreement to testify truthfully, (3) the Commonwealth's improper remarks during opening statements, trial, and closing statements, and (4) contact between the victim's family and two jurors in the courthouse's parking garage. Additionally, Appellant asserted

trial counsel was ineffective for failing to seek admission of evidence of the victim's sexual conduct, namely, the presence of seminal fluid that was not matched to the victim's boyfriend, Appellant, or Appellant's codefendants. Attorney Shahen's petition also listed two claims that Appellant raised in his *pro se* petition, but which counsel believed lacked merit.

Subsequently, Attorney Shahen filed two motions: (1) a counseled motion for a *Grazier* hearing on July 13, 2012,[2] and (2) a motion to add Appellant's *pro se* claims to the amended PCRA petition on August 16, 2012. The PCRA court, on August 23, 2012, granted leave to add claims to the amended petition, but directed counsel to address whether those claims lacked merit. On August 28, 2012, the court denied the amended petition without a hearing and denied the motion for a *Grazier* hearing as moot. The court did not issue a Pa.R.Crim.P. 907 notice in advance of its order denying the amended petition.

On September 14, 2012, Attorney Shahen filed a "no-merit petition and memo" with respect to Appellant's claims raised in Appellant's initial *pro se* petition. Attorney Shahen's no-merit letter, however, did not address all claims raised in his counseled amended petition.[3] The PCRA court, on

---

[2] *See Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998). Appellant previously filed a *pro se* motion for a *Grazier* hearing, which the PCRA court docketed on June 29, 2012.

[3] Attorney Shahen's no-merit letter addressed only one of the five claims set forth in counsel's amended petition.

September 17, 2012, issued a Rule 907 notice of its intent to dismiss Appellant's "*pro se* petitions." On October 12, 2012, the court received a *pro se* response from Appellant.

No further action was taken until October 31, 2013, when the PCRA court received Appellant's *pro se* motion for a **Grazier** hearing. On December 23, 2013, the PCRA court scheduled a hearing on the motion. Following a hearing, the court, on January 13, 2014, granted leave to Attorney Shahen to withdraw and apprised Appellant of his right to proceed *pro se* or with privately retained counsel. The court granted Appellant leave to file an amended petition within 120 days. Appellant requested, and was granted, an extension of time.

On July 14, 2014, Chris R. Eyster, Esq., entered an appearance on Appellant's behalf, and filed a counseled PCRA petition. Appellant, through counsel, asserted (1) trial counsel was ineffective for failing to seek appointment of a defense expert for the SVP proceeding, (2) his sentence was illegal under **Alleyne**, and (3) the Commonwealth, at sentencing, committed prosecutorial misconduct by denying that it had offered a plea deal to Appellant for ten to thirty years' imprisonment.

On July 22, 2014, without knowledge of Attorney Eyster's petition, the PCRA court entered an order denying Appellant's first PCRA petition without a hearing. On July 30, 2014, Appellant filed a motion for reconsideration and, on August 12, 2014, the PCRA court vacated its order. On October 29,

2014, the court issued a notice of its intent to dismiss. Appellant filed a counseled response on November 24, 2014. The court denied the petition without a hearing on December 22, 2014.

Appellant filed a *pro se* notice of appeal, along with a letter to the clerk of the court indicating that "previously retained counsel no longer represents him in the above captioned matter" and was asked to remove himself as counsel of record. Notice of Appeal, 1/11/15. The trial court apparently did not forward the *pro se* notice of appeal to this Court, and Attorney Eyster, on May 20, 2015, filed an application for relief in this Court requesting that the appeal be docketed. Appellant filed a similar application for relief *pro se*.[4]

This Court entered the following order on June 8, 2015:

> Upon consideration of appellant Cox's *pro se* May 26, 2015 "Application for Relief Seeking Permission to Docket Appellant's Notice of Appeal," it is hereby **ORDERED**: As Chris Rand Eyster, Esquire is listed as counsel of record for appellant, the prothonotary is directed to forward the instant application to counsel pursuant to ***Commonwealth v. Jette***, 23 A.2d 1032 (Pa. 2011).
>
> Upon consideration of appellant Cox's May 20, 2015 "Application for Relief," filed by Chris Rand Eyster, Esquire, the application is GRANTED such that the Clerk of Courts of Beaver County is DIRECTED to forward appellant's Notice of Appeal to this Court forthwith.

Order, 6/8/15. Attorney Eyster has taken no further action in this Court.

---

[4] Although Appellant's *pro se* application for relief is technically a nullity because Attorney Eyster remains counsel of record, we note Appellant asserted he could no longer pay Attorney Eyster and instructed counsel to withdraw his appearance.

Appellant filed a *pro se* brief presenting the following questions for review:

Whether the PCRA court erred in finding that direct appeal counsel did not render ineffective assistance of counsel in violation of the 6th Amendment under the U.S. Constitution for counsel's failure to argue on appeal that the trial court abused its discretion, therein violating the appellant's Due Process rights under the 14th Amendment of the U.S. Constitution, by allowing a juror to remain on the jury after finding out that the juror was untruthful on his questionnaire and whether the inability of the appellant to have this critical withheld information made available/known to him at the time of the initial voir dire, effectively deprived the defense of its opportunity to utilize one of its peremptory challenges to have the juror removed, causing appellant to be prejudiced?

Whether the PCRA Court erred in finding that direct appeal counsel did not render ineffective assistance of counsel in violation of the 6th Amendment under the U.S. Constitution for counsel's failure to argue on appeal that the trial court abused its discretion, for refusing to remove 2 jurors who had ex-parte communication with the mother and father of one of the alleged victims, causing the appellant to be denied his U.S. Constitutional right to a fair trial?

Whether the PCRA Court erred in finding that direct appeal counsel did not render ineffective assistance under the 6th Amendment of the U.S. Constitution for counsel's failure to argue on appeal that the trial court violated appellant's Due Process rights under the U.S. Constitution, 8th Amendment right to be free from cruel and unusual punishment when it abused its discretion in sentencing appellant to an illegal sentence pursuant to **United States v. Alleyne**, 133 S. Ct. 2151 (2013)?

Whether the PCRA Court erred in finding that direct appeal counsel did not render ineffective assistance under the 6th Amendment of the U.S. Constitution for counsel's failure to argue on appeal that the trial court abused its discretion when it allowed the Commonwealth to use its peremptory

strike to exclude a juror on the basis of race, thereby violating appellant's 14th Amendment right to a fair trial under the U.S. Constitution, and 8th Amendment right to Equal Protection of the law and federal law, pursuant to **Batson v. Kentucky**, 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712 (1986)?

Whether the PCRA Court erred in finding that direct appeal counsel did not render ineffective assistance under the 6th Amendment of the U.S. Constitution when counsel did not move the Court for appointment of a defense expert, whose testimony would have rebut the Commonwealth's psychiatric expert who condemned appellant as a psychopath and SVP?

Whether the PCRA Court erred in finding that direct appeal counsel did not render ineffective assistance under the 6th Amendment of the U.S. Constitution when counsel failed to take steps to seek admission of evidence consisting of the victim's sexual activities with a third party, other than her paramour or one of the other codefendant's for the purpose of attacking her credibility?

Appellant's *Pro Se* Brief at 4-5.

Preliminary, we must address Appellant's *pro se* status in this appeal. It is well settled that a PCRA petitioner has a right to counsel for the purposes of his first PCRA petition and that the right extends through the appeals process. **See** Pa.R.Crim.P. 904; **Commonwealth v. Smith**, 121 A.3d 1049, 1053 (Pa. Super. 2015). "[O]nce counsel has entered an appearance on a [petitioner's] behalf he is obligated to continue representation until the case is concluded or he is granted leave by the court to withdraw his appearance." **Smith**, 121 A.3d at 1053 (citation omitted).

Instantly, Attorney Eyster has taken no further action of record after this Court's June 8, 2015 order forwarding Appellant's *pro se* application for

relief to counsel pursuant to **Jette**, and granting counsel's application for relief to proceed based on Appellant's *pro se* notice of appeal. However, he remains the attorney of record until he is granted leave to withdraw his appearance. **See Smith**, 121 A.3d at 1053. Therefore, we remand this matter to the PCRA court to determine the status of Attorney Eyster. If the court determines Attorney Eyster remains as counsel, counsel shall file in this Court an advocate's brief or follow the procedures for withdrawal set forth in **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). If Attorney Eyster no longer represents Appellant, the court shall determine whether Appellant wishes to proceed *pro se*, **see Grazier**, 713 A.2d at 82, or is entitled to the appointment of counsel for the purposes of this appeal, **see Smith**, 121 A.3d at 1053. The PCRA court shall make its determinations within sixty days of this decision and transmit its findings to this Court as a supplemental record.

Case remanded with instructions. Panel jurisdiction retained.